IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FORTINET, INC. | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )   Civ. No. 12-1066-SLR |
| | ) |
| FIREEYE, INC., | ) |
| | ) |
|       Defendant. | ) |

Jack B. Blumenfeld, Esquire and Michael J. Flynn, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: John Neukom, Esquire, Charles K. Verhoeven, Esquire, and Andrew M. Holmes, Esquire of Quinn Emanuel Urquhart & Sullivan LLP.

Francis DiGiovanni, Esquire, Chad S.C. Stover, Esquire of Novak Druce Connolly Bove + Quigg LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Shane Brun, Esquire of K&L Gates LLP.

**MEMORANDUM OPINION**

Dated: May 16, 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On August 22, 2012, plaintiff Fortinet, Inc. ("Fortinet") filed a complaint against defendant FireEye, Inc. ("FireEye") alleging infringement of two of its U.S. Patents. (D.I. 1) On August 28, 2012, Fortinet filed an amended complaint adding infringement allegations of four other of its U.S. Patents. (D.I. 8) Presently before the court are FireEye's motions to transfer this action to the Northern District of California (D.I. 12) and to dismiss the first amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (D.I. 21) The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a). For the reasons that follow, FireEye's motion is to transfer is granted; therefore, FireEye's motion to dismiss is denied as moot.

## II. BACKGROUND

Fortinet is a Delaware corporation with its principal place of business at 1090 Kifer Road, Sunnyvale, California 94086. (D.I. 8 at ¶ 3) It is a leading provider of network security appliances and employs 1800 individuals worldwide serving customers around the globe. (*Id.*) In 2011, its revenues were $434 million and it has generated positive cash flow for more than six years. (D.I. 13 at 3-4) Fortinet has litigated in Northern California on at least five occasions since 2008. (*Id.* at 9)

FireEye is a Delaware corporation with its principle place of business at 1440 McCarthy Blvd., Milpitas, California 95035. (D.I. 8 at ¶ 3) FireEye is also engaged in the network security market and employs approximately 300 people worldwide, with 200 working at its headquarters in California. (D.I. 13 at 4) FireEye does not appear to

have previously litigated in any Federal District Court.[1]

## III. STANDARD OF REVIEW

Section 1404(a) of Title 28 of the United States Code grants district courts the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Much has been written about the legal standard for motions to transfer under 28 U.S.C. § 1404(a). See, e.g., In re Link_A_Media Devices Corp., 662 F.3d 1221 (Fed. Cir. 2011); Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir. 1995); Helicos Biosciences Corp. v. Illumina, Inc., 858 F. Supp. 2d 367 (D. Del. 2012).

Referring specifically to the analytical framework described in Helicos, the court starts with the premise that a defendant's state of incorporation has always been "a predictable, legitimate venue for bringing suit" and that "a plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses.'" 858 F. Supp. 2d at 371 (quoting Norwood v. Kirkpatrick, 349 U.S. 29, 31 (1955)). Indeed, the Third Circuit in Jumara reminds the reader that "[t]he burden of establishing the need for transfer . . . rests with the movant" and that, "in ruling on defendants' motion, the plaintiff's choice of venue should not be lightly disturbed." 55 F.3d at 879 (citation omitted).

The Third Circuit goes on to recognize that,

---

[1] Searches by party name in PACER reveal no cases involving "FireEye" in Delaware or the Northern District of California. A search for "FireEye" in the PACER case locator yields only the instant action.

2

> [i]n ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

*Id.* (citation omitted). The Court then describes some of the "many variants of the private and public interests protected by the language of § 1404(a)." *Id.*

> The private interests have included: plaintiff's forum of preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses - **but only to the extent that the witnesses may actually be unavailable for trial in one of the fora**; and the location of books and records (**similarly limited to the extent that the files could not be produced in the alternative forum**).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (citations omitted) (emphasis added).

### B. Analysis

With the above "jurisdictional guideposts" in mind, the court turns to the "difficult issue of federal comity" that transfer motions present. *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 976 (3d Cir. 1988). Fortinet has not challenged FireEye's assertion that venue would also be proper in the Northern District of California; therefore, the court will

not address this further. See 28 U.S.C. § 1404(a); (D.I. 18 at 2-3)

The parties have all chosen legitimate forums in which to pursue the instant litigation. In this regard, certainly a party's state of incorporation is a traditional and legitimate venue, as is the locus of a party's business activities. Given that "convenience" is separately considered in the transfer analysis, the court declines to elevate a defendant's choice of venue over that of a plaintiff based on defendant's convenience. Therefore, the fact that plaintiffs have historically been accorded the privilege of choosing their preferred venue for pursuing their claims remains a significant factor.

A claim for patent infringement arises wherever someone has committed acts of infringement, to wit, "makes, uses, offers to sell, or sells any patented invention" without authority. See generally 35 U.S.C. § 271 (a); Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1360 (Fed. Cir. 1998) (an infringement claim "arises out of instances of making, using, or selling the patented invention"). FireEye argues it has made no direct sales in Delaware and markets its products primarily in and from Northern California. The record indicates that FireEye sold network security products to customers such as Sallie Mae,[2] who have a Delaware presence; therefore, its alleged infringing products are most likely in use in Delaware. (D.I. 18 at 5; D.I. 16 at 11)

The Third Circuit in Jumara indicated that, in evaluating the convenience of the parties, a district court should focus on the parties' relative physical and financial condition. In this case, Fortinet is the larger company based on revenue and number of

---

[2]Sallie Mae purchased its web malware protection system from a FireEye reseller in Missouri. (D.I. 18 at 5-6)

employees. Fortinet has availed itself of the jurisdiction of Northern California on at least five occasions. On the other hand, FireEye has no history of litigation and is indeed much smaller in size and financially.

Considering the convenience of the witnesses and specifically whether witnesses "actually may be unavailable for trial in one of the fora," FireEye does not point out any potential non-party witness that may be unavailable in Delaware, due to the court's inability to compel them to appear at trial.[3] Rather, FireEye simply argues that generally it would be more convenient for the witnesses if the litigation took place in California.[4] (D.I. 13 at 12; D.I. 18 at 7-8)

FireEye admits that most of its books and records are maintained electronically, and its source code may be inspected at any secure location chosen by the parties. (D.I. 13 at 12-13) The documents, therefore, would be readily transferable during discovery or available for trial in Delaware.

As to practical considerations, the court recognizes that trial in California would be less expensive and easier for both parties, as most of the potential witnesses and the headquarters for both corporations are in California. While Fortinet points out

---

[3] With respect to trials, in the nine patent jury trials this judicial officer conducted between March 2010 and October 2011, an average of three fact witnesses per party appeared live for trial, with the average length of trial being 28 hours (with the parties often using less time than allocated, on average, 25 hours).

[4] Depositions in the cases over which this judicial officer presides are generally taken where the deponents reside or work. There is no suggestion that this case will be an exception.

5

several individuals potentially associated with the litigation are outside of California,[5] they are not in Delaware, and Fortinet has not identified any as being crucial to the litigation. Further, Fortinet makes three claims arising under California law - misappropriation of trade secrets, intentional interference with contractual relations, and intentional interference with prospective economic advantage. Additionally, Fortinet bases its claims of indirect and willful infringement on FireEye's hiring former Fortinet employees, which occurred primarily in California.

With respect to administrative difficulty, trial in this case will be scheduled consistent with the parties' proposals. Local interest in deciding local controversies is not a dispositive factor, as patent litigation does not constitute a local controversy in most cases. Indeed, patent litigation implicates constitutionally protected property rights, is governed by federal law reviewed by a court of appeals of national (as opposed to regional) stature, and affects national (if not global) markets. See *Cradle IP, LLC v. Texas Instruments, Inc.*, --- F.Supp.2d ----, 2013 WL 548454, at *4 (D. Del. February 13, 2013). The instant litigation involves software sold and distributed throughout the United States. The remaining *Jumara* public interest factors - the enforceability of a judgment, the public policies of the fora, and the familiarity of the judge with state law - carry little weight in this transfer analysis, although Fortinet has asserted state law claims at bar.

---

[5]One of the named inventors resides in Canada. An attorney involved in the patent prosecution resides in Iowa. One of the former Fortinet employees who now works at FireEye resides in North Carolina. (D.I. 16 at 14-15)

6

## IV. CONCLUSION

In sum, FireEye has the burden of persuading the court that transfer is appropriate, not only for its convenience but in the interests of justice. In this case, Fortinet chose a legitimate forum which all parties have in common - their state of incorporation. As is usual in these cases, the convenience factors do not weigh in favor of transfer, because discovery is a local event and trial is a limited event. This case, however, does present some extenuating circumstances, that is, both parties are headquartered in Northen California, FireEye is the smaller company with no litigation history of record, and Fortinet is pursuing California state law claims against FireEye. For these reasons, the court concludes that transfer is warranted in the interests of justice.