UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

FORTINET INC.,
Plaintiff,

v.

FIREEYE INC.,
Defendant.

Case No. 5:13-CV-02496-EJD

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

**[Re: Dkt. No. 45]**

Presently before the court is Defendant FireEye, Inc.'s ("Defendant") Motion to Dismiss Plaintiff Fortinet, Inc.'s ("Plaintiff") First Amended Complaint ("FAC"). The court found this matter suitable for decision without oral argument pursuant to Civil Local Rule 7–1(b) and previously vacated the hearing. Having fully reviewed the parties' briefing, and for the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART Defendant's Motion to Dismiss.

## I. BACKGROUND

Plaintiff is a worldwide provider of network security appliances and unified threat management solutions. FAC at ¶ 8. Through its research and development, it has obtained patents for its network security innovations. Id. at ¶ 9. Defendant is Plaintiff's competitor in the network security industry. Id. at ¶ 10.

In its FAC, Plaintiff alleges that since 2008, Defendant has hired at least eleven employees who worked for Plaintiff ("Plaintiff employees"). Id. at ¶ 12. While working for Plaintiff, these employees acquired sensitive and valuable trade secret information about Plaintiff's customers,



United States District Court
Northern District of California

United States District Court
Northern District of California

partners, products, and personnel. Id. at ¶ 13. Plaintiff allegedly required its employees to sign an employment agreement swearing them to secrecy. Id. at ¶¶ 14-15. The agreement also prohibited them from inducing other employees to leave Plaintiff and from soliciting Plaintiff's clients. Id. at ¶16. When these employees left to work for Defendant, they allegedly took confidential trade secret information to benefit Defendant. Id. at ¶ 13.

Plaintiff alleges three instances in which its employees took trade secrets with them. First is the example of the "Law Firm Account," in which a Plaintiff employee signed an engagement letter with Defendant in August 2012, unbeknownst to Plaintiff. Id. at ¶ 20. While still working for Plaintiff, this employee received internal confidential emails regarding an account with a large international law firm. Id. This employee forwarded relevant emails relating to this account and containing trade secret information to his personal email address. Id. This employee then left Plaintiff for Defendant. Id. at ¶ 24. Second is the example of the "International Distributor," in which another Plaintiff employee who was a contact and liaison with a certain distributor left to work for Defendant in August 2012. Id. at ¶¶ 25, 28. Shortly after beginning to work for Defendant, this employee began contacting and soliciting the distributor on Defendant's behalf, attempting to forge a new relationship based on Plaintiff's trade secrets about this distributor. Id. at ¶¶ 28, 29. Third is the example of the "Salesforce Database," in which numerous Plaintiff employees accessed Plaintiff's sales database at higher-than-normal frequencies to obtain information regarding sales, leads, customers, distributors, pricing, and other confidential sales information. Id. at ¶ 34. Plaintiff alleges that as their departure dates neared, employees who logged into the database only occasionally during the normal course of their employment began to secretly log in with urgency. Id. Two of these employees logged into the database on their last day with Plaintiff, and one logged in two days after leaving Plaintiff. Id.

Furthermore, Plaintiff alleges that Defendant's current Vice President of Product Management was Plaintiff's former Vice President of Product Management and Product Marketing. Id. at ¶ 43. Defendant has allegedly hired this employee and others who are aware of

United States District Court
Northern District of California

Plaintiff's patent portfolio, and Defendant has used that information to infringe on Plaintiff's patents. Id. at ¶¶ 43-44, 53-54, 63-64, 73-74, 83-84, 93-94.

Plaintiff commenced the instant action on August 22, 2012 in the United States District Court, District of Delaware. See Dkt. No. 1. In September 2012, Plaintiff filed its First Amended Complaint. See Dkt. No. 8. In May 2013, District Judge Sue L. Robinson from the District of Delaware granted Defendant's Motion to Transfer Venue to the Northern District of California. See Dkt. Nos. 30, 31. In June 2013, this case was transferred to this court and assigned to the undersigned judge. See Dkt. Nos. 32, 38. In July 2013, Defendant filed the instant Motion to Dismiss. See Dkt. No. 45. Plaintiff filed an opposition brief, and Defendant filed a reply brief. See Dkt. Nos. 49, 54. No hearing was held.

In its First Amended Complaint, Plaintiff alleges the following claims: (1) patent infringement on six patents; (2) misappropriation of trade secrets; (3) intentional interference with contractual relations; and (4) intentional interference with prospective economic advantage and/or relations.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d

1542, 1555 n.19 (9th Cir. 1990). The court must accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988).

## III. DISCUSSION

### A. Patent Infringement Claims

In the FAC, Plaintiff alleges six claims for patent infringement—one claim for each patent. FAC at ¶¶ 39-98. Defendant's Motion to Dismiss addresses patent infringement under six theories of liability: (1) direct infringement; (2) induced infringement; (3) contributory infringement; and (4) willful infringement. Dkt. No. 45-1 at 10, 11, 13, 14. Each theory of liability will be addressed in turn.

#### 1. Direct Infringement

In its motion, Defendant argues that mere reliance on Form 18 allegations of direct infringement may not be sufficient to survive a motion to dismiss. Mot. to Dismiss, Dkt. No. 45-1 at 10. Alternatively, it argues that at the very least, Plaintiff must plead the information required by Form 18. Id. at 11. It argues that Plaintiff failed to sufficiently identify the component or functionality of Defendant's malware systems that allegedly infringed Plaintiff's patents. Id. Plaintiff, however, argues that its allegations are in compliance with Form 18 because it has pled direct infringement on a per-patent, per-claim and per-product basis. Opp., Dkt. No. 49 at 5-6. It also argues that at the pleading stage, where only fair notice and plausibility are at issue rather than the merits of the case, it is not necessary to allege specific "component or functionality" within the accused products and the ways in which the component satisfies claim language. Id. at 7.

Form 18, Complaint for Patent Infringement, is an appendix of the Federal Rules of Civil Procedure. It sets forth a sample complaint and requires the following:

> (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing

> the patent by "making, selling, and using [the device] embodying the patent;" (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages.

K-Tech Telecomm., Inc. v. Time Warner Cable, Inc., 714 F.3d 1277, 1283 (Fed. Cir. 2013) (citing McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1357 (Fed. Cir. 2007)). "A complaint containing just enough information to satisfy a governing form may well be sufficient under Twombly and Iqbal." K-Tech Telecomm., 714 F.3d at 1284. "Form 18 in no way relaxes the clear principle of Rule 8, that a potential infringer be placed on notice of what activity or device is being accused of infringement." Id.

Here, Plaintiff alleges that he owns six patents: (1) the '135 patent titled "Systems and Methods for Updating Content Detection Devices and Systems," issued in November 2011; (2) the '933 patent titled "Systems and Methods for Content Type Classifications," issued in June 2012; (3) the '974 patent titled "Systems and Methods for Content Type Classification," issued in August 2009; (4) the '543 patent titled "Systems and Methods for Categorizing Network Traffic Content," issued in July 2011; (5) the '483 patent titled "Systems and Methods for Updating Content Detection Devices and Systems," issued in November 2011; and (6) the '205 patent titled "Systems and Methods for Updating Content Detection Devices and Systems," issued in September 2012. FAC at ¶¶ 40, 50, 60, 70, 80, 90.

Plaintiff also alleges that Defendant makes, uses, sells, offers for sale, and/or imports into the United States devices that embody Plaintiff's patents, thereby: (1) Defendant's Malware Protection Cloud infringes the '135, '483, and '205 patents; (2) Defendant's Malware Protection System(s) and Virtual Execution (VX) Engine infringes the '933 and '974 patents; and (3) Defendant's Malware Analysis System and Virtual Execution (VX) Engine infringes the '543 patent. Id. at ¶¶ 42, 52, 62, 72, 82, 92.

Plaintiff has sufficiently pled a direct infringement theory of liability to satisfy Form 18 and Rule 8 pleading standards because it has alleged sufficient facts to put Defendant on notice of what devices are accused of infringing Plaintiff's patents. At this time, it is not necessary for

Plaintiff to identify the specific component or functionality that allegedly infringed on the patents.

2. Induced Patent Infringement

With the exception of the '205 patent, Defendant argues that Plaintiff's allegations are conclusory because Plaintiff fails to allege the identity of any third party who directly infringes the asserted patents or any specific infringing activity by such third party. Dkt. No. 45-1 at 12. It also argues that Plaintiff failed to show that Defendant possessed the requisite specific intent to encourage others' infringement of any of the patents. Id. at 13. Plaintiff, however, argues that it has sufficiently pled the identity of third party infringers, as well as Defendant's knowledge and intent for indirect infringement. Dkt. No. 49 at 9-13.

As to the '205 patent, Defendant argues that inducement allegations are facially implausible given that this patent was issued three days before Plaintiff filed its amended complaint. Dkt. No. 45-1 at 13. Moreover, it argues that Plaintiff admitted the patent was issued after the employee left Plaintiff, and Plaintiff does not allege that this employee continued to monitor changes in Plaintiff's patent portfolio. Id. Plaintiff provides no counterargument.

By statute, "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Liability "requires knowledge that the induced acts constitute patent infringement." In re Bill of Lading Transmission and Processing Sys. Patent Litig., 681 F.3d 1323, 1339 (Fed. Cir. 2012) (quoting Global-Tech Appliances, Inc. v. SEB S.A., —U.S.—, 131 S. Ct. 2060, 2068 (2011)). To survive a motion to dismiss, the complaint must contain facts plausibly showing that defendants specifically intended a third party to infringe the patent and knew that the third party's acts constituted infringement. Id. This does not mean, however, that a plaintiff must prove its case at the pleading stage. Id.

i. *Identifying Third-Party Infringers*

In identifying third-party infringers, "a plaintiff need not identify a *specific* direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists." In re Bill of Lading, 681 F.3d at 1336 (emphasis in original). "Given that a plaintiff's indirect infringement

claims can succeed at trial absent direct evidence of a specific direct infringer, [the Federal Circuit] cannot establish a pleading standard that requires something more." Id.

Here, for each of the patents, Plaintiff identifies the third party in the FAC as "customers" and "end users." FAC at ¶¶ 43, 53, 63, 73, 83. While Plaintiff has not identified a particular person, it has sufficiently pled to raise an inference that at least one direct infringer exists—a customer and/or end user.

ii. *Defendant's Knowledge of the Patents*

In pleading Defendant's knowledge of the patents, Plaintiff alleges that Defendant's current Vice President of Product Management, who was Plaintiff's former Vice President of Product Management and Marketing, has intimate knowledge of each of the patents. FAC at ¶¶ 43, 53, 63, 73, 83. Plaintiff further alleges that, since 2008, Defendant has hired at least eleven Plaintiff employees from key divisions. FAC at ¶ 12. For each of the patents, these employees allegedly have awareness of Plaintiff's patent portfolio given the discussions of Plaintiff's patents and intellectual property rights with its employees. FAC at ¶¶ 43, 53, 63, 73, 83. Moreover, Plaintiff alleges that Defendant has had actual knowledge of all the patents since the filing of the FAC. FAC at ¶¶ 43, 53, 63, 73, 83.

Plaintiff does not allege that Defendant gained its knowledge of the patents through Plaintiff's former employees. However, Plaintiff alleges sufficient facts to indicate that Defendant knew of the patents.

iii. *Defendant's Knowledge and Intent of the Infringing Conduct*

In pleading Defendant's knowledge and intent for the third party's infringing conduct, Plaintiff alleges that for each patent, Defendant's products sold directly to consumers and through its distribution partners are designed to be used (and are used by consumers and end-users) in an infringing manner. FAC at ¶¶ 44, 54, 64, 74, 84.

These bare allegations are not sufficient to plead that Defendant knew of the third party's infringing conduct, and that they had the specific intent to cause a third party to infringe. The

United States District Court
Northern District of California

allegations provided by Plaintiff are too conclusory.

iv. *The '205 Patent*

Plaintiff's opposition provides no counterargument to Defendant's contention that it is facially implausible to allege induced patent infringement given that this patent was issued 3 days prior to filing the FAC. Without an explanation to make sense of the allegations, this court agrees with Defendant.

In sum, Plaintiff has not sufficiently pled an induced patent infringement theory of liability. The allegations concerning Defendant's knowledge and intent of the infringing conduct are insufficient, and the allegations concerning the '205 patent are facially implausible.

3. Contributory Patent Infringement

Defendant argues that Plaintiff failed to identify any direct infringer, any directly infringing product or system, or any components that embody a material part of the invention especially made for use in infringement of the patents. Dkt. No. 45-1 at 14. Defendant further argues that Plaintiff did not allege facts showing Defendant's knowledge of instances of direct infringement, or knowledge that the combination was both patented and infringing. Id. Plaintiff presents the same arguments as with induced patent infringement. Dkt. No. 49 at 9-13.

By statute, "[c]ontributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, has no substantial non-infringing uses, and is known by the party 'to be especially made or especially adapted for use in an infringement of such patent.'" 35 U.S.C. § 271(c); In re Bill of Lading, 681 F.3d at 1337. To state a claim, a plaintiff must "plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." In re Bill of Lading, 681 F.3d at 1337. "[A] substantial non-infringing use is any use that is not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." Id. (internal quotations and citations omitted).

Plaintiff has not sufficiently pled a contributory patent infringement theory of liability.

United States District Court
Northern District of California

The allegations are too conclusory to form a viable claim.

4. Willful Patent Infringement Claim

Defendant argues that Plaintiff has not shown a good faith basis to allege this claim. Dkt. No. 45-1 at 14. Plaintiff, however, argues that it sufficiently pled the knowledge its former employees had when they went to work with Defendant, and that Defendant has continued to sell its infringing product. Dkt. No. 49 at 14. As to the '205 patent, Plaintiff drops its claim of willful infringement. Id. at 14 n.12.

For an award of enhanced damages under 35 U.S.C. § 284, there must be willful infringement. Potter Voice Techs., LLC v. Apple Inc., —F. Supp. 2d—, 2014 WL 46768, at *2 (N.D. Cal. Jan. 6, 2014) (Wilken, J.). "A finding of willfulness allows the Court to multiply any patent infringement damages up to threefold, as well as award attorneys' fees." Id.; 35 U.S.C. §§ 284, 285. "The infringer acts willfully when it was aware of the asserted patent, but nonetheless acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." Potter Voice Techs., 2014 WL 46768, at *2. "Whether an act is willful is by definition a question of the actor's intent, the answer to which must be inferred from all the circumstances." Id. (internal quotations and citations omitted). To prove willful infringement, at least a showing of objective recklessness must be made. In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

Here, Plaintiff has not sufficiently pled a willful patent infringement theory of liability. Plaintiff alleges that Defendant's Vice President of Product Management and former Plaintiff employees knew of the patents. FAC at ¶¶ 43, 53, 63, 73, 83. It also alleges that Defendants had knowledge of the patents and has continued the sale of its products. Id. However, Plaintiff does not allege that it was the Vice President and former employees that told Defendants of the patents, and with this knowledge acquired by these individuals, Defendants sold and continues to sell its alleged infringing products. Defendant's intent or objective recklessness has not been sufficiently pled.

United States District Court
Northern District of California

5. Conclusion

The only patent infringement theory of liability that survives this motion is direct infringement. All other theories of liability are dismissed because they are insufficiently pled. Accordingly, Defendant's motion to dismiss the patent infringement claim of each patent is GRANTED IN PART AND DENIED IN PART.

**B. Misappropriation of Trade Secrets Claim**

Defendant argues that Plaintiff provides no factual allegations that Defendant obtained any trade secrets, and that Defendant used or disclosed trade secrets in any improper manner. Dkt. No. 45-1 at 5. Defendant then focuses on the three examples provided by the FAC. First, as to the Law Firm Account, Defendant argues that Plaintiff cannot contend that the Firm's identity is a trade secret. Id. at 6. Also, Plaintiff has not pled the requisite harm because it failed to allege that it lost the Law Firm Account or any of its business. Id. Second, as to the International Distributor, Defendant argues that Plaintiff cannot allege that the identities of its distributors are trade secrets because that information is publicly known, and it has not alleged that a Plaintiff employee obtained the trade secrets for Defendant's benefit. Id. at 7. Third, as to the Salesforce Database, Defendant argues that Plaintiff has not sufficiently alleged the identities of the former employees, that these employees obtained a trade secret and gave it to Defendant, and that Defendant knew of this conduct and improperly used the information. Id. at 8. Plaintiff, however, argues that it did provide sufficient factual allegations for this claim. Dkt. No. 49 at 16-17. It also argues that Defendant's arguments concerning the Law Firm Account, International Distributor, and Salesforce Database should not be considered because Defendant relies on a heightened pleading standard and are generally irrelevant to the point of this claim—that Defendant had access to a large quantity of trade secrets and used it to benefit its own growth. Id. at 19-20.

The California Uniform Trade Secrets Act prohibits misappropriation of trade secrets, which it defines as:

> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (2) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>
> > (A) Used improper means to acquire knowledge of the trade secret; or
> >
> > (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:
> >
> > > (i) Derived from or through a person who had utilized improper means to acquire it;
> > >
> > > (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
> > >
> > > (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
> >
> > (C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Cal. Civ. Code § 3426.1(b). "Improper means" include the "breach or inducement of a breach of a duty to maintain secrecy." Cal. Civ. Code § 3426.1(a).

To state a claim for misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"), a plaintiff must allege that: (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff. Mintel Learning Tech., Inc. v. Ambow Educ. Holding Ltd., 2012 WL 762126, at *2 (N.D. Cal. Mar. 8, 2012) (Davila, J.).

1. Trade Secret Subject Matter

As to the first element, Plaintiff alleges the trade secret to be: (1) customer and potential customer names, contacts, lists, purchasing histories, purchasing preferences, purchasing forecast, and identity of key corporate "decision makers;" (2) key business partner, distributor, wholesaler, and value-added reseller names, contacts, and lists, including key downstream companies in the sales channel; (3) non-public product, pricing, marketing, and sales information, including sales

histories, trends, forecasts, plans, techniques, methods, processes, product characteristics, product tests, and other proprietary competitive knowledge and intelligence; and (4) non-public, unique human resources information and employee-specific information, including confidential competitive salary and compensation package information. FAC at ¶ 13, 15, 100. Moreover, Plaintiff alleges that it took precautions to safeguard this information by protecting its facilities, servers, computers, networks, databases, and communications systems using physical and electronic security systems, such as access cards, password protection systems, firewalls, and encrypted communications technology. Id. at ¶¶ 14, 103. Plaintiff further alleges that its employees are required to read, acknowledge, and sign an employment agreement and/or a proprietary information and inventions agreement swearing them to secrecy and loyalty. Id.

Plaintiff has alleged sufficient facts to show that it owned trade secrets and it took measures to safeguard the information. See Brocade Commc'n Sys., Inc. v. A10 Networks, Inc., 873 F. Supp. 2d 1192, 1214 (N.D. Cal. 2012) (customer-related information including lists and historical purchasing information receive trade secret protection) (collecting cases); Competitive Techs. v. Fujitsu Ltd., 286 F. Supp. 2d 1118, 1147 (N.D. Cal. 2003) (information pertaining to pricing, marketing, and sales strategy may be considered a trade secret if it is not public information).

2. Misappropriation of the Trade Secret

Plaintiff alleges that since 2008, Defendant has hired at least eleven Plaintiff employees from key divisions such as product managers, marketing experts, security and systems engineers, account managers, and senior sales managers. FAC at ¶ 12. While working for Plaintiff, these employees allegedly acquired intimate knowledge of the trade secrets. Id. at ¶ 13. They allegedly entered into an agreement with Defendant where they would misappropriate Plaintiff's trade secrets, and they disclosed and/or used the trade secrets to sell Defendant's products, services, or other offerings that would compete with Plaintiff's. Id. at ¶ 105-06. Plaintiff then discusses three examples (1) the Law Firm Account example, where a Plaintiff employee, who had signed an

engagement letter with Defendant without Plaintiff knowing, forwarded to his personal email confidential information pertaining to one of Plaintiff's accounts before the employee left for Defendant; (2) the International Distributor example, where a Plaintiff employee, who had information about Plaintiff's distributors and resellers, left to work for Defendant and began to contact and solicit one of Plaintiff's distributors using Plaintiff's confidential information; and (3) the Salesforce Database example, where numerous Plaintiff employees, who had access to Plaintiff's database holding its customer and sales information, accessed the database at higher-than-normal frequencies before they left for Defendant, and one of these employee logged into the database two days after leaving Plaintiff. Id. at ¶¶ 20, 28, 34.

Defendant argues that Plaintiff's allegations assume that because Plaintiff employees went to work for Defendant, the employees disclosed the trade secrets. Reply, Dkt. No. 54 at 2. It argues that Plaintiff's allegations ring more of inevitable disclosure than of trade secret misappropriation. The doctrine of inevitable disclosure provides that the disclosure of trade secrets is unavoidable because the employee inevitably will use them in his new position with a competing employer. Bayer Corp. v. Roche Molecular Sys., Inc., 72 F. Supp. 2d 1111, 1117 (N.D. Cal. 1999). California has rejected this theory of liability. Id. at 1112.

Plaintiff's allegations that these employees had knowledge of the trade secrets and then went to work for Defendant is not sufficient to allege misappropriation because they ring more of inevitable disclosure than misappropriation. However, Plaintiff's allegations to the three instances where former Plaintiff employees took information prior to leaving for Defendant are sufficient to make a plausible claim of misappropriation.

3. Harm to Plaintiff

Plaintiff alleges that Defendant has "used and benefited" from Plaintiff's trade secrets without permission or compensation. FAC at ¶ 19. It alleges that the trade secret misappropriation interfered with Plaintiff's potential economic advantage to Plaintiff's detriment. Id. at ¶ 24, 31. It further alleges that its business relationship with its customers and distributors

were disrupted. Id. at ¶ 38.

While these allegations are general, the failure to specifically plead the amount of harm or the mechanism of causation is not necessarily fatal to a complaint. Plaintiff has made sufficient allegations of the existence of a valuable trade secret and its improper use. The alleged harm of interfering with Plaintiff's potential economic advantage and the disruption of the business relationship between Plaintiff and its customers and distributors is sufficient. Accordingly, Defendant's motion to dismiss this claim is DENIED.

**C. Tortious Interference**

Plaintiff sets forth two tortious interference claims. First, Plaintiff alleges intentional interference with contractual relations. It alleges that a valid agreement existed between Plaintiff and its former employees, and Defendant knew that these employees had a duty under their employment agreements not to work for or assist any competitor and not disclose trade secrets to any competitor. FAC at ¶¶ 115-16. Defendant intentionally solicited, induced, and encouraged these employees to breach their contract with Plaintiff, and as a result, these employees did breach their contract. Id. at ¶¶ 117-18. Second, Plaintiff alleges intentional interference with prospective economic advantage and/or relations. Plaintiff alleges that it developed economic relationships with its customers and business partners, and that Defendant used valuable confidential information without authorization to compete with Plaintiff. Id. at ¶¶ 123-24. Plaintiff alleges that Defendant offered to sell to Plaintiff's existing and probable customers based on Plaintiff's confidential information, and that Defendant has solicited business relationships with Plaintiff's business partners. Id. at ¶¶ 125-26.

Defendant argues that both of these claims should be dismissed because they are both preempted under CUTSA. Dkt. No. 45-1 at 9. Plaintiff concedes to CUTSA preemption and does not object to this court disregarding the allegations that Defendant has committed torts through the misappropriation of trade secrets. Dkt. No. 49 at 20. However, Plaintiff argues that the claims should not be dismissed because they are not based on the same nucleus of facts as the trade

United States District Court
Northern District of California

secrets claims and, thus, are not preempted by CUTSA. Id. at 21.

Under California law, CUTSA preempts all common law claims based on the same nucleus of facts as the misappropriation of trade secrets. MedioStream, Inc. v. Microsoft Corp., 869 F. Supp. 2d 1095, 1114-15 (N.D. Cal. 2012) (collecting cases). Each claim will be addressed in turn.

1. Intentional Interference with Contractual Relations

To state a claim for intentional interference with contractual relations, a plaintiff must show: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. CRST Van Expedited, Inc. v. Werner Enters., Inc., 479 F.3d 1099, 1105 (9th Cir. 2007); Reeves v. Hanlon, 33 Cal. 4th 1140, 1148 (2004).

Plaintiff's claim focuses on Defendant's alleged solicitation, inducement, and encouragement of Plaintiff's employees to breach their contracts with Plaintiff, thus this claim is not preempted by CUTSA. Plaintiff, however, does not provide sufficient allegations to show that Defendant's intentional acts were designed to induce breach of disruption of the contractual relationship. Plaintiff provides conclusory allegations that Defendant "solicited, induced, and encouraged" the employees, but it provides no factual allegations as to how. These bare allegations are insufficient, thus, Defendant's motion as to this claim is GRANTED.

2. Intentional Interference with Prospective Economic Advantage and/or Relations

On its face, the allegations focus on Defendant's alleged use of valuable confidential information to sell its products to Plaintiff's customers and solicit business relationships with Plaintiff's business partners. These allegations are based on the same nucleus of facts as the trade secret claims. Accordingly, Defendant's motion as to this claim is GRANTED. Given that this claim is barred as a matter of law, there will be no leave to amend.

## IV. CONCLUSION

Based on the foregoing reasons, Defendant's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART. In sum:

1. Plaintiff's direct patent infringement claims may proceed. All other theories of liability pertaining to the patent infringement claims are DISMISSED WITH LEAVE TO AMEND.
2. Plaintiff's trade secrets claim may proceed.
3. Plaintiff's intentional interference with contractual relations is DISMISSED WITH LEAVE TO AMEND.
4. Plaintiff's intentional interference with prospective economic advantage and/or relations is DISMISSED WITHOUT LEAVE TO AMEND.

Plaintiffs can file its second amended complaint addressing the deficiencies stated herein no later than 15 days from the date of this order.

The court schedules this case for case management conference at 10:00 a.m. on December 5, 2014. Parties shall file a joint case management conference statement on or before November 26, 2014.

**IT IS SO ORDERED.**

Dated: September 30, 2014

EDWARD J. DAVILA
United States District Judge